IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | ) | |
|---|---|---|
| James Reed, Jr., and Richard Reed, | ) | |
| *Plaintiffs*, | ) | No. 14 C 1862 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| Navistar, Inc., | ) | |
| *Defendant*. | ) | |

## MEMORANDUM OPINION AND ORDER

James Reed, Jr. and Richard Reed filed this action against Navistar, Inc. alleging that they suffered employment discrimination when they were discharged by Navistar based on their age in violation of the Age Discrimination in Employment Act of 1967. Navistar now moves for summary judgment. For the following reasons, the Court denies Navistar's Motion for Summary Judgment. (Dkt. No. 25).

### I. BACKGROUND

The following facts are undisputed unless otherwise noted. Navistar hired James Reed, Jr. in 1992 and Richard Reed in 1998. (Def. 56.1, ¶¶ 5, 7; Pl. 56.1 Resp., ¶¶ 5, 7). From 2010 until his discharge in 2013, James worked as a Senior Analytical Analyst in Navistar's Warranty Group. (Def. 56.1, ¶ 8; Pl. 56.1 Resp., ¶ 8). During that same time period, Richard worked as a Regional Warranty Specialist in the same group as James. (Def. 56.1, ¶ 6; Pl. 56.1 Resp., ¶ 6). From 2010 to 2012, both Reeds worked at Navistar's Paramount facility in Warrenville, Illinois. (Def. 56.1, ¶ 9; Pl. 56.1 Resp., ¶ 9). In January 2012, the Warranty Group—including the Reeds—moved to Navistar's current headquarters in Lisle, Illinois. (Def. 56.1, ¶ 11; Pl. 56.1 Resp., ¶ 11).

The Reeds were assigned cubicles and desktop computers at both the Warrenville and Lisle facilities. (Def. 56.1, ¶ 9-11; Pl. 56.1 Resp., ¶ 9-11). In December 2012, Ron Johnson, a member of Navistar's technology support team performed an audit on the amount of data stored by employees on their U-drives, which are electronic file storage spaces on Navistar's computer network. (Def. 56.1, ¶ 21; Pl. 56.1 Resp., ¶ 21). The audit searched employees' U-drives for video and music files and generated a spreadsheet of the results. (Def. 56.1, ¶ 21; Pl. 56.1 Resp., ¶ 21). The spreadsheet listed the files that were found and the employees' U-drive identification number where the files were found. (*Id.*) In his review of the spreadsheet, Johnson found a video file named "car wash1.mpg." (Def. 56.1, ¶ 22; Pl. 56.1 Resp., ¶ 22). The video depicted a naked woman washing a pickup truck. (*Id.*) Johnson reported his findings to Mark Hipp, a computer forensic analyst in Navistar's IT Department. (Def. 56.1, ¶ 23; Pl. 56.1 Resp., ¶ 23).

Hipp identified the U-drive where the video was found as belonging to Richard Reed and, with his supervisor's approval, he began investigating Richard's network U-drive, computer hard-drive, and email account for other inappropriate images and videos. (Def. 56.1, ¶ 25; Pl. 56.1 Resp., ¶ 25). Hipp confined his content search to items stored between December 16, 2012 and January 29, 2013. (Def. 56.1, ¶ 26; Pl. 56.1 Resp., ¶ 26). Ultimately, Hipp identified about 72 items containing "inappropriate images." (Def. 56.1, ¶¶ 27, 31; Pl. 56.1 Resp., ¶¶ 27, 31). Hipp presented a summary report of his findings to his supervisor, Ryan Johanneson. (Def. 56.1, ¶ 32; Pl. 56.1 Resp., ¶ 32). On January 31, 2013, after reviewing the report, Johanneson contacted Kay Carroll—Navistar's Human Resources Director—and informed her of the investigation's findings. (Def. 56.1, ¶ 33; Pl. 56.1 Resp., ¶ 33). Carroll directed Shelette Smith—Navistar's Senior HR Consultant—to contact Johanneson "because Johanneson and his team discovered inappropriate images and emails on Richard Reed's network drive and email

account." (*See* Decl. Smith at ¶ 5; Def. 56.1, ¶ 34; Pl. 56.1 Resp., ¶ 34; *see also* Dep. Smith at 78-79).

Hipp was then asked by Johanneson to do an extended search and determine whether any of the Navistar employees to whom Richard had sent inappropriate emails forwarded those emails to other Navistar employees. (Def. 56.1, ¶ 35; Pl. 56.1 Resp., ¶ 35). Hipp found that Richard had forwarded the inappropriate emails to 16 Navistar employees. (Def. 56.1, ¶ 36; Pl. 56.1 Resp., ¶ 36). Hipp then collected data from the company email accounts of these sixteen individuals between 1/1/2010 to 1/31/2013 and searched whether those employees forwarded the inappropriate emails from Richard. (Def. 56.1, ¶ 37; Pl. 56.1 Resp., ¶ 37). Hipp did not search whether these individuals sent any other inappropriate emails—he only searched whether the emails forwarded to them from Richard were then forwarded. (Def. 56.1, ¶ 35; Pl. 56.1 Resp., ¶ 35).

On February 5, 2013, Hipp completed his extended search and discovered that ten of the sixteen employees had forwarded the inappropriate emails from Richard to others. (Def. 56.1, ¶ 38; Pl. 56.1 Resp., ¶ 38). He provided that information to Johanneson and the implicated employees were subsequently disciplined. (*Id.*) Hipp did not know the ages of the sixteen employees and he did not know how long Richard or James had worked with the company. (Def. 56.1, ¶ 39; Pl. 56.1 Resp., ¶ 39).

### A. Discipline

The parties dispute the circumstances surrounding the creation and application of the criteria used to determine discipline for, what the parties agree, were "inappropriate" emails. The parties cannot even agree on what deponents testified to during their depositions with respect to this inquiry in spite of having the benefit of transcribed depositions. The parties generally agree

that Navistar purports to have considered how recently the emails were sent and whether they were sent internally or externally in determining each employee's sanction. They dispute, however, the specific considerations. Smith testified that the emails needed to be sent both internally and externally within the six months preceding the investigation to precipitate termination; while sending the emails just internally or just externally would have warranted only a written warning. (Dep. Smith at 57-59). Johanneson, meanwhile, testified that the emails needed to be sent internally within the six months preceding the investigation to warrant termination. (Dep. Johanneson at 125). Ultimately, out of Richard and the nine employees that forwarded the emails from Richard, two were fired and the rest were given final written warnings.

### B. Termination of Richard Reed

During the six months preceding the investigation, Richard sent six inappropriate emails: at least three of which were sent to Navistar email addresses. (Def. 56.1, ¶ 49; Pl. 56.1 Resp., ¶ 49). Ultimately, Smith and Carroll agreed that Richard should be terminated. (Def. 56.1, ¶ 53; Pl. 56.1 Resp., ¶ 53). Johanneson did not recall making a recommendation as to whether Richard should be terminated. (*See* Def. 56.1, ¶ 53; Pl. 56.1 Resp., ¶ 53). Smith and Carroll testified that they did not know how old Richard was when he was fired. (Def. 56.1, ¶ 54; Pl. 56.1 Resp., ¶ 54). Smith, however, knew that that Richard was a long-term employee of Navistar. (*Id.*) She also knew that his age would have been available in his human resources file. (Def. 56.1, ¶ 39; Pl. 56.1 Resp., ¶ 39). According to Richard, he had "seen Carroll at work from time to time during the last year of his employment." (*See* Pl. 56.1 Resp., ¶ 54). Richard was 61 years old when he was terminated. (Def. 56.1, ¶ 62; Pl. 56.1 Resp., ¶ 62).

### C. Termination of James Reed

From January 2010 to January 2013, James forwarded eight emails containing images of nude and semi-nude women from his Navistar email account. (Def. 56.1, ¶ 55; Pl. 56.1 Resp., ¶ 55). James conceded during his deposition that all of the images were inappropriate workplace communications. (Def. 56.1, ¶ 57; Pl. 56.1 Resp., ¶ 57). The parties dispute, however, why James was terminated. Navistar maintains that Smith, Johanneson, and Carroll decided to terminate James because he had forwarded an inappropriate email to Richard within the six months preceding the investigation, while James insists that he did not forward an inappropriate email to Richard in the six months before the investigation. (Def. 56.1, ¶ 60; Pl. 56.1 Resp., ¶ 60). Whatever the reason, James was terminated at the age of 69. (Def. 56.1, ¶ 62; Pl. 56.1 Resp., ¶ 62). Smith and Carroll testified that they did not know how old James was when he was terminated. (Def. 56.1, ¶ 54; Pl. 56.1 Resp., ¶ 54). Smith, however, knew that James was a long-term employee of Navistar. (Def. 56.1, ¶ 61; Pl. 56.1 Resp., ¶ 61). She also knew that his age would have been available in his human resources file. (*Id.*)

### D. Discipline of Other Employees

Of the eight other employees who were found to have forwarded inappropriate emails, there were four employees over the age of 40. (Def. 56.1, ¶ 62; Pl. 56.1 Resp., ¶ 62). Those employees were given final warnings either because they had sent the subject emails outside the six months preceding the investigation or had sent them only to personal email addresses. (Def. 56.1, ¶¶ 62-67; Pl. 56.1 Resp., ¶¶ 62-67). The four employees under the age of forty were also given a final warning for similar reasons. (Def. 56.1, ¶¶ 68-72; Pl. 56.1 Resp., ¶¶ 68-72).

### E. The Reeds' Discrimination Charges with the EEOC

After Navistar terminated the Reeds' employment, the Reeds filed age discrimination charges with the Illinois Department of Human Rights, which they also cross-filed with the Equal Employment Opportunity Commission. (*See* Compl. ¶ 6). The Reeds claimed that Navistar discharged them because of their age. (*Id.*) Specifically, Navistar's position paper to the EEOC, Navistar stated that "Richard Reed and Jim Reed were the only employees who had actually sent the inappropriate emails to co-workers and other recipients from their Company-owned computers. The other employees had deleted the emails they received and had not originated any emails with inappropriate content." (Pl. 56.1, ¶ 27; Def. 56.1 Resp., ¶ 27). The EEOC issued Dismissal and Notice of Rights letters around December 24, 2013. (*See* Compl. ¶ 6). The Reeds allege—and Navistar does not dispute—that they timely filed this suit within 90 days of receiving their respective EEOC letters. *See* 42 U.S.C. § 2000e-5(f)(1).

### II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (internal quotation marks and citation omitted). Because the Reeds bears the ultimate burden of persuasion, Navistar's summary judgment burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [the Reeds'] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 234 (7th Cir. 2014). "Upon such a showing, the nonmovant must then 'make a showing sufficient to establish the existence of an element essential to that party's case.' "

*Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). Although the nonmovant does not need to "depose her own witnesses or produce evidence in a form that would be admissible at trial," she must "go beyond the pleadings…to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor." *Id*. at 1168-69 (internal quotation marks and citation omitted).

## III. DISCUSSION

Employment discrimination claims brought under the ADEA may be proven using either the "direct" or "indirect" methods of proof. *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 876 (7th Cir. 2014); *Andrews*, 743 F.3d at 234. The distinction between the two methods, however, is "vague." *Sylvester v. SOS Children's Villages Ill., Inc.*, 453 F.3d 900, 903 (7th Cir. 2006). Indeed, the terms are somewhat "misleading." *See Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). "Direct" proof is not limited to admissions or near-admissions by the employer that its decisions were based on age, but it also includes circumstantial evidence that suggests discrimination. *See id*. The "indirect" method of proof involves a "subset of circumstantial evidence (including the disparate treatment of similarly situated employees) that conforms to the prescription of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Id*. at 490-491. The Reeds purport to be proceeding under both theories

### A. Direct Method of Proof

Under the direct method of proof, the Court notes that there has been no admission by Navistar that it terminated the Reeds because of their age. The Court, therefore, must consider whether the Reeds have provided sufficient circumstantial evidence in the record to demonstrate a genuine issue of material fact. Circumstantial evidence of intentional discrimination includes: "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments

directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Sun v. Bd. of Trs. of Univ. of Ill.*, 2007 WL 93313, at *12 (7th Cir. Jan. 16, 2007); *see, e.g., Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720-21 (7th Cir. 2005). The circumstantial evidence offered by the Reeds in this case is that younger employees were given preferential treatment over them and that Navistar's stated legitimate reason for terminating them was mere pretext. Specifically, the Reeds claim that eight employees who were younger than they and engaged in similar misconduct were merely given a final warning for their misconduct instead of being discharged:

| Age | Name |
|---|---|
| 32 | McLaughlin |
| 37 | Jamros |
| 38 | Olejniczak |
| 38 | Bala |
| 48 | Graybeal |
| 48 | Krason |
| 54 | Gall |
| 58 | Cloke |

In support of their argument, the Reeds point to conflicting evidence of the criteria used in determining each employee's sanction. For example, Smith testified that in order to be fired, the employee must have sent the emails both internally and externally within the preceding six months of the investigation to precipitate termination; while employees who sent emails just internally or just externally would have warranted only a written warning. Johanneson, on the other hand, testified that an employee who sent emails internally within 60 days of the investigation warranted termination. A third method of reasoning and a wholly-distinct account

8

of the facts was set forth in Navistar's position paper to the EEOC, in which Navistar stated that "Richard Reed and Jim Reed were the only employees who had actually sent the inappropriate emails to co-workers and other recipients from their Company-owned computers. The other employees had deleted the emails they received and had not originated any emails with inappropriate content." These disparities make it impossible for the Court—which is not the finder of fact at this stage—to determine whether the legitimate reason Navistar claims to have had in discharging the Reeds is mere pretext.

Even assuming the termination criterion set forth in Navistar's briefing was actually applied—namely, that only employees who sent an inappropriate email to an internal email address within the six months preceding the investigation were terminated—there remain other fact disputes in the record. First, these criteria set a much stricter standard of review for Richard Reed than for the other implicated employees. Navistar relied on an investigation of all of Richard's outgoing emails, while it only relied on an investigation of emails forwarded by the other employees from Richard in evaluating their conduct. Second, James disputes that he sent an email from his company email account to Richard within the six months preceding the investigation and that appears to be corroborated by the email exhibits to his deposition. Exhibit Number 33 from Richard's deposition shows an inappropriate email from a "jim reed" (justritej@att.net) to Richard within six months preceding the investigation, but there is no evidence that that "jim reed" is the plaintiff in this case and, even if it were, the email was sent from a personal email account. On this record, it cannot be determined if the criteria was applied similarly to those who were discharged and those who were merely disciplined.

### B. Indirect Method of Proof

Under the indirect method of proof, a plaintiff must set forth by a preponderance of the evidence that (1) they are members of a protected age class; (2) they met Navistar's legitimate employment expectations; (3) they suffered an adverse employment action; and (4) similarly-situated employees outside of their protected class were treated more favorably. *Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 702 (7th Cir. 2012). Generally, if the plaintiff "makes this prima facie case, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for its action. If the defendant does so, the burden shifts back to the plaintiff, who must present evidence that the stated reason is pretext for discrimination." *Adams v. City of Indianapolis*, 742 F.3d 720, 735 (7th Cir. 2014); *see also Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (quoting *Adusumilli v. City of Chicago*, 164 F.3d 353, 362 (7th Cir.1998)).

Navistar argues that the Reeds cannot satisfy the second and fourth elements of their prima facie case. Because these arguments on whether the Reeds met Navistar's legitimate employment expectations and whether "similarly-situated" employees were treated more favorably than the Reeds are both tied to the Reeds' pretext theory, the Court considers the arguments together. *See Curry v. Menard, Inc.*, 270 F.3d 473, 478 (7th Cir. 2001) (it makes no sense to evaluate whether the plaintiff is meeting "legitimate expectations" when she admits to violating company policies but is alleging she was punished more harshly than non-black employees who also violated the policy); *see also Adams*, 742 F.3d at 735 (observing that the fourth element of the prima facie case often merges with the question of pretext); *Box v. A & P Tea Co.*, 772 F.2d 1372, 1378 (7th Cir. 1985) (moving directly to third step of *McDonnell Douglas* approach where defendant provided proof of a legitimate, nondiscriminatory reason for adverse employment action).

To avoid summary judgment, the Reeds must show by a preponderance of the evidence that Navistar's proffered reason for terminating their employment is pretextual. *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 737 (7th Cir. 2006). To establish a genuine issue of material fact regarding pretext, the plaintiff "must show that '1) it is more likely a discriminatory reason motivated the employer than the proffered non-discriminatory reason or 2) that an employer's explanation is not credible.' " *Id.* (quoting *Hudson*, 375 F.3d at 561). The plaintiff must "specifically refute facts which allegedly support the employer's proffered reasons." *Mills v. First Fed. Sav. & Loan Ass'n*, 83 F.3d 833, 845 (7th Cir. 1996) (citation omitted) (emphasis omitted). Conclusory assertions about a decision maker's prejudice are insufficient to establish pretext. *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1007 (7th Cir. 2002).

Navistar claims a legitimate, non-discriminatory reason for discharging the Reeds while merely issuing a warning to the eight other employees; namely, that the Reeds' conduct was more egregious than the other, younger employees based on Navistar's defined criteria. To demonstrate pretext, the Reeds once again dispute the criteria and the application of the criteria used by Navistar in making its disciplinary decisions. Because fact disputes remain regarding whether the criteria was applied in the same manner to plaintiffs and to others, the Court cannot make a determination at this stage that as to whether the firing was pretextual.Summary judgment is inappropriate where factual disputes remain regarding how the criteria was applied, what the criteria was, and who enforced the criteria.. *See Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 487 (7th Cir. 2015) (quoting *Coleman v. Donahoe*, 667 F.3d 835, 852-53 (7th Cir. 2012) ("Pretext can be shown by 'identif[ying] … weaknesses, implausibilities, inconsistencies, or contradictions' in an employer's asserted reason for taking an adverse employment action such 'that a reasonable person could find [it] unworthy of credence.") (alterations in original)).

Navistar attempts to circumvent the pretext issue by insisting that the slight three and seven-year age differential between Richard and two of the employees that were provided mere warnings for their misconduct undercuts the Reeds' prima facie case of discrimination. Yes, in general, when the plaintiff and those allegedly favored over him are within the same protected class, "the prima facie case under the ADEA require[s] a sufficient disparity in ages." *See Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 659 (7th Cir. 2001) (internal quotation marks and citation omitted). A ten-year difference in ages between the plaintiff and the favored parties presumptively "substantial," while five or seven-year differences may be insignificant to set forth a prima facie age discrimination case in and of itself. *See Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 643 (7th Cir. 2008) (three-year age difference not significant); *Bennington*, 275 F.3d at 659 (finding five-year age difference insufficient by itself to establish prima facie age discrimination case).

In this case, however, the age differential between Richard and those two individuals is not the only piece of evidence relied upon by the Reeds in establishing their prima facie case. There were not just two, but eight other individuals who were given warnings instead of being terminated. And, out of a group of ten individuals, only the two oldest individuals were discharged. Moreover, some of the representations made to the EEOC regarding the disciplinary policies followed by Navistar are inconsistent with the story now before this Court. There are simply too many disparities for the Court to resolve this case as a matter of law.

Finally, Navistar's claim that its employees did not know how old the Plaintiffs were at the time they were discharged is also disputed by the facts. Smith, Carroll, and Johanneson knew testified that they did not know the exact ages of the Reedswhen they decided to terminate them; however, there is evidence in the record that knew both Reeds were long-term employees of

Navistar; that their ages were in their human resources files; she was able to access those files; and that she had seen at least one of them in the hallways from time to time. Although there is a factual dispute here also and the law generally supports the inference that most employers have knowledge of age of their employees. *See, e.g., Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 12010 (9th Cir. 2008) (finding on-the-job contact was sufficient to warrant an inference of the employer's knowledge of age); *Woodman v. WWOR TV, Inc.*, 411 F.3d 69 (2d Cir. 2005) ("In the majority of age discrimination cases, a defendant employer's knowledge of a plaintiff's age will be undisputed because employers routinely maintain employee age information in their personnel files or are generally aware of employees' relative ages from personal on-the-job contact. Such circumstances easily support an inference of employer knowledge, certainly at the prima facie stage, where plaintiff's burden is minimal.").

Although Navistar may have terminated its employees for breaching their company policy regarding the use of their work computers rather than due to their age, there remain too many fact disputes to make that determination. A jury will need to decide that issue. Navistar's motion for summary judgment is denied.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment [25] is denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: ___3/31/2016___

13